UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| A.O.A., et al., | ) | Case Nos. 4:11CV44 CDP |
| | ) | 4:11CV45 CDP |
| Plaintiffs, | ) | 4:11CV46 CDP |
| | ) | 4:11CV47 CDP |
| vs. | ) | 4:11CV48 CDP |
| | ) | 4:11CV49 CDP |
| DOE RUN RESOURCES | ) | 4:11CV50 CDP |
| CORPORATION, et al., | ) | 4:11CV52 CDP |
| | ) | 4:11CV55 CDP |
| Defendants. | ) | 4:11CV56 CDP |
| | ) | 4:11CV59 CDP |

## **MEMORANDUM AND ORDER**

Plaintiffs in these cases are Peruvian children who allege that they have been injured by exposure to toxic substances from the La Oroya Complex, a metallurgical smelting and refining complex operating in La Oroya, Peru. Through their next friends, they filed these eleven actions in Missouri state court, alleging tort claims against the American companies who allegedly control the mine. Defendants The Renco Group Inc., DR Acquisition Corporation, Renco Holdings Inc., and Ira L. Rennert properly removed the cases on January 7, 2011, pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, because plaintiffs' actions are related to an arbitration currently set between The Renco Group and the government of Peru.

The defendants move to stay these proceedings pending the resolution of the international arbitration.  I conclude that neither a mandatory nor a discretionary stay is appropriate in these cases, so I will deny defendants' motions to stay.

## Background

The La Oroya Complex has operated in La Oroya, Peru for almost 100 years, and consists of smelters and refineries that process minerals mined from the Andes mountains into copper, lead, zinc, and other metals.  The government of Peru expropriated the Complex in 1974 and transferred its ownership and operations to Centromin, a Peruvian government-owned company.  In the 1990s, Centromin began studying the Complex's environmental impacts on La Oroya and its surrounding area.  These studies revealed significant pollution of the environment, including lead contamination in the soil, and culminated in a set of environmental proposals and projects designed to improve the environment.  The proposals were codified into Peruvian law as the Programa de Adecación y Manejo Ambiental (PAMA), which required Centromin to complete certain environmental projects around the Complex by 2007.

In 1997, defendant The Renco Group (Renco) and other American investors purchased the Complex from Centromin pursuant to a Share Transfer Agreement (STA). Centromin agreed to continue some environmental clean-up projects begun under PAMA, including remedying the environment around the La Oroya

Complex.  Centromin also agreed to assume all liability for any claims by third parties arising from their toxic emissions released before the sale.  Peru guaranteed Centromin's agreements in a separate Guaranty.  Renco and the investors agreed to continue some clean-up efforts, and to be responsible to third parties for any damages they alone caused.

Plaintiffs allege that they were injured by exposure to toxic substances emitted from the Complex, including lead.  For several years, they and numerous other Peruvian children have brought claims against the American companies that purchased and invested in the Complex, including defendants The Renco Group, Doe Run Resources Corporation, D.R. Acquisition Corporation, and Renco Holdings.  They also have sued several executives at these companies – Marvin Kaiser, Albert Bruce Neil, Jeffrey Zelms, Theodore Fox, Daniel Vornberg, and Ira Rennert.  Plaintiffs allege that these defendants are responsible for the toxic emissions that have caused their injuries.[1]

The plaintiffs filed their most recent cases in Missouri state court in August 2008, asserting the same claims against the same defendants as in their previous filings.  Defendants unsuccessfully attempted to remove all eleven cases to this Court in 2008 and, upon remand to Missouri state court, unsuccessfully attempted

---

[1]Cases previously filed in this Court bear case numbers: 4:07CV1874 CDP, 4:08CV525 CDP; 4:08CV1416 CDP; 4:08CV1420 CDP.

to transfer venue. Meanwhile, defendants attempted to get Peru to enter into the cases and defend them against plaintiffs' claims on the ground that plaintiffs' injuries, if any, were caused by exposure to toxic substances emitted by the Complex while Peru owned and operated it through Centromin, and not by any of their actions after purchasing the Complex.  They also assert that Peru has failed to complete environmental clean-up projects around La Oroya as promised in the STA.  When the government of Peru ultimately refused to enter these cases on November 26, 2010, Renco notified Peru of its intent to arbitrate its disputed claims pursuant to the United States-Peru Trade Promotion Agreement of April 12, 2006.  This Treaty provides for the arbitration of any investment disputes between American companies and Peru.

On December 29, 2010, Renco submitted its claims against Peru to arbitration, and the defendants removed these eleven actions on January 7, 2011. In their Notices of Removal, defendants asserted that plaintiffs' claims are related to the pending arbitration and thus are removable under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards.  I agreed with defendants and allowed the cases to remain in this Court.  Defendants then moved to stay these proceedings under the Federal Arbitration Act (FAA) pending the completion of the international arbitration.

## **Discussion**

Under 9 U.S.C. § 3 of the FAA, a court shall stay proceedings if (1) the pending litigation involves issues "referable to arbitration under . . . an agreement," and (2) the party requesting the stay "is not in default in proceeding with such arbitration." In contrast, the standard for whether removal is appropriate under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards depends on whether plaintiffs' claims "relate to" the pending arbitration, which I interpreted as whether the arbitration "could *conceivably* affect the outcome of plaintiff's case." (Doc. #45, at 9-13). This standard is different and much lower than the question of whether the issues are "referable to arbitration" under the agreement, and so my ruling denying remand to state court is not dispositive on the stay question.

Determining the scope of an arbitration agreement, including the parties bound by it, requires analysis of state contract law. *Arthur Andersen LLP v. Carlisle*, 129 S.Ct. 1896, 1902 (2009). "'[T]raditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel.'" *Id*. "If a written arbitration provision is made enforceable against (or for the benefit of) a third party under state contract law, the [FAA's] terms are fulfilled." *Id.*

The issues raised by plaintiffs in their complaints are not the same as the issues pending in the international arbitration, so as to be "referable to arbitration" under the agreement. Defendants argue that the core issue before the arbitration panel is whether Peru or the defendants should defend this litigation, so allowing this litigation to proceed and forcing defendants to defend the cases is tantamount to deciding that central issue. Plaintiffs, on the other hand, contend that the core issue before the arbitration panel is indemnification, and that therefore this litigation may proceed to a final determination of whether defendants are responsible for plaintiffs' injuries, at which point the arbitration decision becomes relevant as to who will pay any damages awarded.

Plaintiffs' complaints allege separate counts of negligence, civil conspiracy, and strict liability against the group of corporate defendants and the group of individual defendants.[2] The essential elements of the negligence claims that plaintiffs have pled and must prove are that defendants "negligently, carelessly, and recklessly generated, handled, stored, released, disposed of, and failed to control and contain the metals and other toxic substances used and generated by the complex" (Compl. ¶ 41), failed to warn the plaintiffs of potential danger from the substances, and that plaintiffs were injured as a result of these defendants'

---

[2]The plaintiffs' complaints also allege a count of "contribution based on tortious conduct of entities acting in concert – all defendants." To the extent that this count merely alleges joint negligence of all of the defendants so as to impose joint and several liability, it does not contain separate elements relevant to this analysis.

actions.  Regarding the negligence count against only the individual defendants, plaintiffs additionally allege that defendants made decisions to cause this harm with actual knowledge of the consequences.

In their civil conspiracy counts, plaintiffs allege that defendants exercised their control over the La Oroya complex by refusing to institute policies that would protect the minor plaintiffs in order to avoid the additional costs and to make a substantial profit.  Finally, plaintiffs' strict liability claims allege that operation of the complex constitutes an abnormally dangerous activity, so defendants are strictly liable for all of plaintiffs' resulting injuries.

In their arbitration with Peru, defendants seek, among other things, "[a] declaration that Peru is required to (1) appear in and defend the Lawsuits and any similar lawsuits, [and] (2) indemnify, release, protect and hold Renco, DRP and their affiliates harmless from those third-party claims . . . ." (Doc. #57-1, at 21-22).  Centromin and Peru agreed in the STA to indemnify the defendants for any damage or obligations that may arise against all third-party claims during the term of the PAMA, which has been extended through March 2012,  except:

> (a) Those that arise directly due to acts that are not related to Metaloroya's PAMA which are exclusively attributable to [defendants] but only insofar as said acts were the result of the [defendants'] use of standards and practices that were less protective of the environment or of public health than those that were pursued by Centromin until the date of the signing of this contract. . . .

>   (b) Those that result directly from a default on the Metaloroya's
>   PAMA obligations on the part of [defendants] or of the obligations
>   established by means of this contract . . . .

The issues for arbitration necessarily center on the above agreement terms. The arbitration panel will first decide whether the third-party claims arise from acts related to the PAMA. If they do, then Peru will not indemnify the defendants if the defendants breached their PAMA obligations. Alternatively, if they do not relate to the PAMA, then Peru will not indemnify the defendants if they used less protective standards than had been used previously. These are the only questions before the arbitration panel that relate directly to the pending litigation in this Court.

The allegations contained in plaintiffs' complaint relate to specific actions allegedly taken by the defendants, causing particular damages, without any reference to defendants' obligations under the PAMA or the STA. Conversely, in the arbitration, the starting inquiry is the scope of the PAMA and its ramifications for Peru's indemnification obligations. Even where there may be an overlap between defendants' actions for purposes of this litigation and for purposes of the arbitration, it is irrelevant because the analysis performed by each forum is separate and independent, as the issues are not identical but merely loosely related. Accordingly, it is clear that the issues in this case and the issues in the arbitration

are not the same, so defendants' argument that plaintiffs' claims are "referable to arbitration" under the agreement fails.

Defendants further argue that plaintiffs are bound under the traditional contract principle of direct benefits estoppel. This theory "'involve[s] non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract.'" *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517-18 (5th Cir. 2006) (quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 200 (3d Cir. 2001)). "A non-signatory can 'embrace' a contract containing an arbitration clause in two ways: (1) by knowingly seeking and obtaining 'direct benefits' from that contract; or (2) by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract." *Noble Drilling Servs, Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010).

Contrary to defendants' contentions, plaintiffs have not embraced the STA in such a manner as to be bound by direct benefits estoppel. Defendants' basic argument is that plaintiffs have defined the scope of their claims based on defendants' retained liability under the STA. In order to support this argument, defendants attach an exhibit summarizing all of the instances in which plaintiffs

allegedly embraced the STA.³  But plaintiffs only invoked the agreements as a defensive argument to counter defendants' claims that they could not be liable for their own negligent acts because the STA somehow absolved them of all potential liability to these plaintiffs.  Plaintiffs have never affirmatively invoked the agreements in any of their original pleadings or motions, including their complaint in this case, which necessarily defines the scope of their claims against defendants.  Rather, plaintiffs have only referenced the scope of defendants' liability under the agreements as a direct response to defendants' endless attempts to avoid litigation in this matter through their own arguments regarding their liability under the agreements.  Therefore, because plaintiffs have never embraced the STA or guaranty under the theory of direct benefits estoppel, defendants' argument on this basis for a mandatory stay also fails.

Even if a stay is not mandatory under the theory of direct-benefits estoppel, it could still be granted as a discretionary matter.  A stay of "litigation between nonarbitrating parties" is permitted under 9 U.S.C. § 3 "as long as that lawsuit is based on issues referable to arbitration under an arbitration agreement . . . ."

---

³For example, in an earlier proceeding between these parties in this Court, plaintiffs argued:  "Plaintiffs' claims against Defendants are based on liabilities they retained under the Stock Transfer Contract for these types of third-party claims . . . ." (Doc. #59-1, at 1).  Additionally, in a memorandum previously filed by plaintiffs in this proceeding, they asserted: "Plaintiffs' Complaint and other pleadings have made it abundantly clear that the damages they seek are ***exclusively attributable to Defendants*** and arise from practices that were ***less protective of the environment and public health*** that (sic) those used by the Republic of Peru, and also arise from a default of Defendants' PAMA obligations" (Doc. #43, at 9) (emphasis in original).

*Contracting Northwest, Inc. v. City of Fredericksburg, Iowa*, 713 F.2d 382, 387 (8th Cir. 1983). A discretionary stay "makes eminent sense when the third party litigation involves common questions of fact that are within the scope of the arbitration agreement." *Id*. Furthermore, a district court has "the inherent power to grant [a] stay in order to control its docket, conserve judicial resources, and provide for a just determination of the cases pending before it." *Id.* (citing *Am. Home Assurance Co. v. Vecco Concrete Const. Co.*, 629 F.2d 961, 964 (4th Cir. 1980)). In a complex, multi-party dispute such as this one, three factors are relevant in determining whether to issue a discretionary stay: "the risk of inconsistent rulings, the extent to which parties will be bound by the arbitrators' decision, and the prejudice that may result from delays . . . ." *AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 242 F.3d 777, 783 (8th Cir. 2001).

      With respect to the first factor, the risk of inconsistent rulings, I find that this risk is low, weighing in favor of denying the stay. As mentioned above, the issues to be resolved by the arbitration and in this litigation are separate and distinct. The issue in this litigation of whether defendants are liable for causing the plaintiffs' injuries is not equivalent to the issue in the arbitration of whether the Republic of Peru must indemnify defendants for costs and any damages resulting from such liability. Further, the facts involved in this case needed to prove defendants' liability to plaintiffs are different from those needed for

defendants to be entitled to indemnification.  Therefore, the first factor supports denial of a discretionary stay.

Regarding the second factor, I find that plaintiffs will not be bound by the arbitration, again weighing in favor of denying the stay.  Plaintiffs are not parties to the arbitration, and they are not participants in any arbitration agreement with either the defendants or the Republic of Peru.  It is irrelevant that the arbitration panel may consider the actions of the defendant in determining whether indemnification is warranted; that decision does not affect plaintiffs' ability to litigate regarding defendants' alleged tortious conduct against them.  Regardless of whether the Republic of Peru must indemnify the defendants or defend the case, plaintiffs do not lose their right to sue the individuals of their choice.  If indemnification or costs of defense are appropriate in this case, defendant may seek such reimbursement separately and independently from this litigation.

Finally, as to the third factor, I find that the prejudice involved weighs in favor of denying the stay.  This case was originally filed over four years ago, and no court has ever had the opportunity to reach the merits.  The defendants have given no indication regarding how long the arbitration process may take to complete, but plaintiffs have suggested that it could take as long as several years.  Defendants previously indicated that it took three years of negotiations with the Republic of Peru for them to reach the initial point of demanding arbitration.

While this case is pending, the plaintiffs' alleged injuries remain unaddressed in any American court, and the evidence for both sides continues to get more stale. As a result, because the arbitration will last for an undetermined, yet potentially very lengthy, period of time, and because this case has already been pending for several years, the prejudice involved necessitates denying a discretionary stay.

Therefore, after balancing the factors required in the discretionary stay analysis, I find that such action is not warranted in this case, and the circumstances also fail to warrant issuance a mandatory stay.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to stay proceedings pending arbitration [#56] is DENIED.

These cases will be set for a Rule 16 Scheduling Conference by separate order.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 7th day of December, 2011.